**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Enlightened Armadillo Incorporated, *et al.*, | No. CV-25-02663-PHX-JJT |
| Plaintiffs, | **ORDER** |
| v. | |
| Lance Freeman, | |
| Defendant. | |

At issue is Defendant Lance Freeman's second Motion to Dismiss (Doc. 22, Mot.), to which Plaintiffs Enlightened Armadillo, Inc., Mark and Ella Hrubant, and Snug Holding Company LLC ("Plaintiffs") responded (Doc. 24, Resp.), and Defendant replied (Doc. 26, Reply). For the reasons below, the Court will grant in part and deny in part Defendant's Motion.

## I.    BACKGROUND[1]

The following facts are drawn from Plaintiffs' First Amended Complaint (Doc. 19, FAC), taken as true, and construed in the light most favorable to the Plaintiffs as the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).

Enlightened Armadillo, Inc., and its owners Mark and Ella Hrubant are residents of Texas ("Texas Plaintiffs") and Snug Holding Company, LLC is a Georgia company ("Georgia Plaintiff"). (FAC ¶¶ 25–28.) Defendant is an Arizona resident. (FAC ¶ 29.) He served as the President of Franchise Development for Xponential, which owned Yoga Six

---

[1] When referring to papers submitted by the parties, the Court cites to the page number as generated by the Electronic Court Filing system, not the parties' own page demarcation.

Franchise, LLC ("Yoga Six"). (FAC ¶ 4.) Defendant "and his team" told Plaintiffs that Yoga Six franchises retained sufficient membership, were profitable, and were "turn-key." (FAC ¶¶ 10, 15-16, 45–63.) These communications were done by phone and video in the time leading up to Plaintiffs entering their respective franchise agreements. (FAC ¶¶ 15–16, 45–63.) Defendant distributed and discussed franchise disclosure documents that, according to Plaintiffs, failed to disclose individuals with management responsibility of Yoga Six, litigation and settlements involving those individuals, and the actual initial investment cost and financial performance of franchises. (FAC ¶¶ 112–13, 142–43, 150, 152–56, 173, 187, 203, 219, 233.) Georgia Plaintiff entered a franchise agreement with Yoga Six on June 7, 2021, and Texas Plaintiffs did the same on November 24, 2021 ("Agreements"). (FAC ¶¶ 9, 64.) Plaintiffs experienced delays in opening the franchise studios, membership attrition, and significant monthly losses after opening. (FAC ¶¶ 65–83.) Plaintiffs have since closed their franchises. (FAC ¶¶ 11, 21.)

On November 22, 2023, Plaintiffs sued Defendant and other individuals and entities related to Yoga Six in California state court.[2] (Mot. at 3–4; Resp. at 2.) Plaintiffs brought several causes of action arising under the California Franchise Investment Law ("CFIL"), Cal. Corp. Code § 31001 *et seq.*, that regulates and governs the sale of franchises in that state. The CFIL also "prohibit[s] the sale of franchises where the sale would lead to fraud or a likelihood that the franchisor's promises would not be fulfilled," and provides remedies for injured franchisees. Cal. Corp. Code § 31001.

On April 22, 2025, Defendant was dismissed from the California state court action for lack of personal jurisdiction. (Resp. at 1–2.) On July 28, 2025, Plaintiffs commenced the instant action against Defendant here in his home state, bringing seven claims arising under the CFIL and one claim of common law fraudulent misrepresentation. (*See* Doc. 1.) Later, Plaintiffs amended their pleading[3] to add one claim arising under the Arizona

---

[2] According to the parties' briefing, this action is ongoing. *See Enlightened Armadillo, Inc., et al. v. Yoga Six Franchise, LLC,* Case No. 30-2023-01367265-CU-AT-CJC.

[3] As an administrative matter, the Court will deny as moot Defendant's first Motion to Dismiss (Doc. 16), which they filed prior to Plaintiffs amending their pleading as a matter of course.

Consumer Fraud Act ("ACFA"). (FAC ¶¶ 239–45.) Defendant now moves to dismiss all claims against him under various theories.

Upon review of the parties' briefing, the Court was unpersuaded that California state law applied to Plaintiffs' claims against Defendant. The Court ordered the parties to submit additional briefing on which state's law controls each of Plaintiffs' claims or issues raised in the First Amended Complaint (Doc. 27), and they did (Doc. 28, Def. Br.; Doc. 29).

## II.    LEGAL STANDARD

### A.    Motion to Dismiss

Rule 12(b)(6) is designed to "test[] the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A dismissal under Rule 12(b)(6) for failure to state a claim can be based on either: (1) the lack of a cognizable legal theory; or (2) the absence of sufficient factual allegations to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When analyzing a complaint for failure to state a claim, the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins*, 568 F.3d at 1067. A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

"While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation modified). Legal conclusions couched as factual allegations are not entitled to the assumption of truth and therefore are insufficient to defeat a motion to dismiss for failure to state a claim. *Iqbal*,

556 U.S. at 679–80. However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (citation modified).

### B.    Judicial Notice

In ruling upon a motion to dismiss, the court may consider only the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. See *Mir v. Little Co. of Mary Hospital*, 844 F.2d 646, 649 (9th Cir. 1988). The court may take judicial notice of facts "not subject to reasonable dispute" because they are either: "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201; *see also Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (noting that the court may take judicial notice of undisputed "matters of public record"). The court may disregard allegations in a complaint that are contradicted by matters properly subject to judicial notice. *Daniels–Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

### C.    Statutes of Limitations

At this stage, dismissal on statute of limitations grounds is appropriate when, "accepting all well-pled facts in the complaint as true, it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *United States v. Page*, 106 F.4th 834, 838 (9th Cir. 2024) (citation modified). Dismissals are inappropriate "where the applicability of the equitable tolling doctrine depended upon factual questions not clearly resolved in the pleadings" or where "factual and legal issues are not sufficiently clear to permit [a court] to determine with certainty whether the doctrine could be successfully invoked." *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1207 (9th Cir. 1995).

### D.    Choice of Law

"Choice of law requires determining the *single* state's substantive law that applies to a particular plaintiff's claims." *Cimoli v. Alacer Corp.*, 587 F. Supp. 3d 978, 988 (N.D.

Cal. 2022) (emphasis in original). When, as here, the Court has jurisdiction based on the diversity of the parties, it must apply Arizona's conflict of law rules to decide which state's law should govern the issues raised in the case. *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941). "Arizona is the forum state, and thus its law will govern both procedural issues and the choice of law regarding substantive issues." *Pounders v. Enserch E & C, Inc.*, 232 Ariz. 352, 354, 306 P.3d 9, 11 (2013). Which state's law will determine the rights and liabilities of the parties is a substantive matter to be determined by a choice of law analysis, and Arizona applies the Restatement (Second) of Conflict of Laws ("Restatement"). *Bryant v. Silverman*, 703 P.2d 1190, 1191 (Ariz. 1985). The proper procedural law to be applied, however, will usually be the law of forum state. Restatement § 142(1). As relevant here, Arizona courts consider statutes of limitation to be procedural, so those Arizona statutes would ordinarily apply even in cases involving another state's substantive law. *Albano v. Shea Homes Ltd. P'ship*, 227 Ariz. 121, 127 (2011); *see also* Restatement § 142 (noting that the statute of limitations of the forum apply). However, the Restatement distinguishes between statutes of limitations barring the remedy and those barring the right. Restatement § 143. Arizona courts have developed this distinction to mean that statutes barring the right, also known as "statutes of repose" or "nonclaim statutes," are substantive law and will be taken from the state bearing the most significant relationship to the parties pursuant to the choice of law analysis.

Traditionally, the difficulty arises in distinguishing between statutes of limitation and repose. According to the Arizona Supreme Court, the two statutes are similar in that they both identify the outer limits of time in which an action can be brought and extinguish legal rights if not enforced timely. *Cox v. Ponce in & for Cnty. of Maricopa*, 251 Ariz. 302, 305 (2021). They differ in that statutes of limitation can be tolled while statutes of repose cannot. *Id.* at 305–06. The purpose of a statute of repose reveals why this distinction is helpful, as those statutes are "intended to establish a limit beyond which no suit may be pursued, and sets a period of time within which claims must be brought regardless of when

the cause of action may accrue. Thus, under statutes of repose, a claim may be barred if it does not accrue within the allowable statutory period." *Id*. at 306 (citation modified).

## III.    ANALYSIS

In briefing the conflict of laws analysis, the parties both conclude that the substantive law of California applies to all Plaintiffs' claims. "[T]he Court need not and does not question the parties' assumptions on that point," so California law shall apply to the substantive matters here. *Moddha Interactive, Inc. v. Philips Elec. N. Am. Corp.*, 92 F. Supp. 3d 982, 989 (D. Haw. 2015) (applying the law cited by the parties to a motion to dismiss), *aff'd*, 654 F. App'x 484 (Fed. Cir. 2016).

### A.    Count Nine: Common Law Fraudulent Misrepresentation

The Court will consider Plaintiffs' claims in reverse order, beginning with the ninth claim for common law fraudulent misrepresentation. (FAC ¶¶ 246–55.) That claim is based on Defendant's various representations he made to Plaintiffs to induce them into purchasing their franchises. (*Id*.) These representations are the same as those that form the basis for Plaintiffs' claims arising under the CFIL.

Defendant argues that the common law claim is preempted by the CFIL pursuant to § 31306. In the version of the CFIL that was effective until December 31, 2022, § 31306 stated that "no civil liability in favor of any private party shall arise against any person by implication from or as a result of the violation of any provision of this law or any rule or order hereunder," but also included a savings clause providing that "[n]othing in this chapter shall limit any liability which may exist by virtue of any other statute or under common law if this law were not in effect." Cal. Corp. Code § 31306 (1971).

California state courts interpreted this version of § 31306 to mean "that those allegations of fraud that are based on CFIL violations are preempted, while claims independent of CFIL violations are not. Put differently, section 31306 is best understood as displacing those claims that rest on misrepresentations or omissions covered by the several provisions of the CFIL, and the saving clause merely clarifies that the CFIL does

not completely preempt the field." *Samica Enters., LLC v. Mail Boxes Etc. USA, Inc.*, 637 F. Supp. 2d 712, 721 (C.D. Cal. 2008).

While the CFIL was amended on January 1, 2023, to remove the preemption clause of § 31306, *see* Cal. Corp. Code § 31306 (2023), at least one court determined that it has no retroactive effect, meaning § 31306 still preempts fraud or misrepresentation claims based on CFIL violations predating January 1, 2023. *Bundoo Khan Ca LLC v. MAK Al Haaj Bundoo Khan*, No. 8:24-CV-02274-JVS-ADS, 2025 WL 1674488, at *7 (C.D. Cal. May 13, 2025). Based on the authority cited by Defendant, which Plaintiffs do not dispute or provide contrary authority thereto, the Court will apply the version of § 31306 that existed at the time that Plaintiffs entered their Agreements in 2021, and that version preempts the fraudulent misrepresentation claim because it is based on the same conduct giving rise to the CFIL violations. Accordingly, the Court dismisses Count Nine.

**B.    Count Eight: ACFA Claim**

Plaintiffs' eighth claim arises under the ACFA and, according to Plaintiffs, is pled in the alternative. Plaintiffs concede that "[i]f the Court ultimately determines the CFIL applies to all of Defendant's conduct, then the CFIL count would supersede" the ACFA claim. (Resp. at 8.) The Court agrees and accordingly dismisses Count Eight.

**C.    Counts One through Seven: CFIL Claims**

Plaintiffs' remaining claims are brought under the CFIL. Specifically, Plaintiffs assert their first, second, fourth, and seventh claims under § 31200 and their third, fifth, and sixth claims under both § 31200 and § 31201.[4]

1.    *Statutes of Limitations*

Claims asserting a violation of § 31200 of the CFIL are barred after the earliest of: (1) four years after the violation; (2) one year after the discovery by the plaintiff of the facts constituting the violation; or (3) 90 days after delivery to the franchisee of a written notice disclosing the violation. *See* Cal. Corp. Code § 31303. Claims asserting a violation of

---

[4] Plaintiffs assert that their third, fifth, and sixth claims are for violations of the CFIL § 32101, but that section does not exist. The Court presumes, as Defendant did, that Plaintiffs meant § 31201, as was cited in other portions of the First Amended Complaint. (*See* FAC ¶ 149; Mot. at 3, 7, 10; Resp. at 15 n.6; Reply at 2.)

- 7 -

§ 31201 are barred by the same three-part limitation above except that the four-year limit is shortened to two years. *See* Cal. Corp. Code § 31304.

Defendant argues these claims should be dismissed because they are barred under the CFIL's statutes of limitations set forth in §§ 31303 and 31304. (Mot. at 7–9.) Plaintiffs respond that Arizona's limitation saving statute, A.R.S. § 12-504, tolls those statutes of limitations. (Resp. at 5–6.)

In determining whether this State's tolling principles apply, the Court must determine whether §§ 31303–04 of the CFIL are statutes of limitations or repose. Defendant argues, and Plaintiffs do not contest, that §§ 31303–04 impose absolute 4-year and 2-year limits, respectively, from the date the violation occurred, and those limits cannot be tolled. (Mot. at 8.) California case law supports Defendant's position. *People ex rel. Dep't of Corps. v. SpeeDee Oil Change Sys.*, Inc., 95 Cal. App. 4th 709, 727 (2002), *as modified* (Feb. 1, 2002), *as modified* (Feb. 8, 2002) ("Once the four-year or two-year period expires, a plaintiff's belated discovery of the fact constituting [a CFIL] violation cannot serve to extend the statute of limitations. In other words, the four-year bar in section 31303 and the two-year limit in section 31304 are absolute."); *see also Quick Dispense, Inc. v. Vitality Foodservice, Inc.*, No. 8:23-CV-02322-FWS-ADS, 2024 WL 2925589, at *3 (C.D. Cal. June 4, 2024).

After considering the plain language of §§ 31303–04 and the California state courts' interpretation of that plain language, the Court determines that those statutes bar a potential litigant's right to bring an action after two or four years no matter when the litigant discovers the violation or their injury. The Arizona Supreme Court has identified this very feature as one that characterizes a statute of repose, *Cox*, 251 Ariz. at 305–06, and that guides the Court's decision here. Accordingly, the portions of §§ 31303–04 that establish the two- and four-year limits constitute substantive law that must be applied to Plaintiffs' CFIL claims.

Having decided that the two- and four-year limits of §§ 31303–04 apply, the Court must determine whether they bar Plaintiffs' CFIL claims. Georgia Plaintiff entered its

Agreement on June 7, 2021, which means the § 31200 claims are barred after June 7, 2025, and the § 31201 claims are barred after June 7, 2023. As to Texas Plaintiffs, they entered their Agreement on November 24, 2021, so the § 31200 claims are barred after November 24, 2025, while the § 31201 claims are barred after November 24, 2023. Plaintiffs filed this action on July 28, 2025. Under the absolute time limitations imposed by §§ 31303–04, all of Georgia Plaintiff's CFIL claims are barred and the portion of Texas Plaintiffs' claims arising under § 31201 are barred, leaving only Texas Plaintiffs' claims asserted under § 31200.

Defendant argues that these remaining claims are also barred under the portion of § 31303 that limits § 31200 claims after one year from the time that the violations were discovered. According to Defendant, that time limitation cannot be tolled, and Plaintiffs filed this action too late because they had known of their claims at least by November 22, 2023, when they sued Defendant in California for the same claims based on the same operative facts. (*Compare* FAC (counts one through seven) *with* Doc. 25-1 (counts one through eight).) If Defendant's argument is to be credited, Plaintiffs would have had to file this action against Defendant here no later than November 22, 2024, to survive the one-year discovery limitation.

The one-year discovery limitation in §§ 31303–04, however, presents more as a traditional statute of limitations that is ordinarily based upon the time that a litigant should or does discover facts giving rise to claims. Unlike statutes of repose, statutes of limitation can be tolled. *See McCloud v. Ariz. Dep't of Pub. Safety*, 217 Ariz. 82, 87 (Ariz. Ct. App. 2007) ("It is hornbook law that limitations periods are 'customarily subject to equitable tolling.'") (citing *Young v. United States*, 535 U.S. 43, 49 (2002)). In essence, §§ 31303–04 are "hybrid" statutes that feature both repose and limitation and are both substantive and procedural.[5]

. . .

---

[5] Hybrid statutes of this sort exist all over the country. In fact, the Ninth Circuit has identified various "hybrid" state and federal statutes that featured both repose and limitation. *See Bennett v. United States*, 44 F.4th 929, 933 (9th Cir. 2022) (collecting cases and discussing the Federal Tort Claims Act).

Both Arizona and California courts toll "the limitation period of a second action during the pendency of a first action later found to be defective." *Collier v. City of Pasadena*, 142 Cal. App. 3d 917, 923 (Cal. Ct. App. 1983); *see McCloud*, 217 Ariz. at 87. While Arizona has gone further and codified this principle in a limitation saving statute, *see* A.R.S. § 12-504, California courts nonetheless toll statutes of limitations applying to claims that were, at one point, timely filed but were later re-filed outside of the limitation period. *Collier*, 142 Cal. App. 3d at 923–26. Whether this Court were to apply the equitable tolling as codified in A.R.S. § 12-504 or as announced in California case law, the outcome is the same: the one-year discovery limitation of § 31303 was tolled in the time that Plaintiffs pursued their claims against this Defendant in the California state court.

Defendant argues that tolling the one-year limitation period would undermine the CFIL. But, as discussed above, § 31303 of the CFIL is a hybrid statute that imposes both an absolute 4-year limitation and an equitable 1-year discovery limitation. The discovery limitation, of course, is subject to the absolute boundary of four years, but Texas Plaintiffs' remaining claims do not offend that four-year boundary. Within those four years in which the filing of the remaining claims fall, the traditional principles of equitable tolling as to discovery of the § 31200 violations may apply. This not only serves the purpose of the CFIL that affords franchisees recourse against violations of franchisors, but it also serves California public policy that seeks to "avoid[] the hardship upon plaintiffs of being compelled to pursue simultaneously several duplicative actions on the same set of facts," *Collier*, 142 Cal. App. 3d at 926, and comports with A.R.S. § 12-504.

Having established that equitable tolling may apply to the one-year discovery limitation of § 31303, the Court now evaluates the parties' arguments as to whether it saves Texas Plaintiffs' remaining claims here. On this point, the Court takes judicial notice of Plaintiffs' original complaint against Defendant and others that was filed in the Orange County Superior Court of California on November 22, 2023 (Doc. 17-1), and that state court's order ruling on demurrer issued April 22, 2025 (Doc. 25-2). The Court will not take the facts asserted in these documents as true; rather, it will consider only the dates of those

documents and the claims originally brought by Plaintiffs to determine whether the instant claims were equitably tolled.

Defendant argues that Plaintiffs knew of their claims as of November 22, 2023, when they filed the California state action, which means that Plaintiffs would have had to file the instant claims in this Court by November 22, 2024, to comply with the one-year discovery limitation. (Mot. at 7–8.) But under either A.R.S. § 12-504 or California case law, the day that Plaintiffs filed the first action—which is the same day that Defendant argues that Plaintiffs must have discovered their claims—was the day that the one-year discovery limitation began tolling. The tolling period ended when Defendant was dismissed from the California state action on April 22, 2025, for want of personal jurisdiction. Plaintiffs filed this action five months later, well within the one-year discovery limitation period.

Next, Defendants argue that Plaintiffs must have known about their claims sometime before they filed the first action. (Mot. at 8.) Maybe so, but Defendant does not pinpoint for the Court when that knowledge would have arisen in relation to the filing of the California action. When Texas Plaintiffs discovered the § 31200 violations is not readily apparent from the face of the First Amended Complaint such that this Court could determine that the claims are time barred. Whether Plaintiffs did, in fact, discover those violations before they filed the first action is the kind of factual determination that is inappropriate at this stage.

### 2.    *Contractual Waiver and Liability Shifting Provision*

Defendant advances one final argument for dismissal: Plaintiffs are bound to pursue the instant claims against Yoga Six alone, having released Defendant and other Yoga Six agents from suit in the Agreements. (Mot. at 12–17.) Defendant argues that two sections of the Agreements, §§ 17.6 and 18.4, shift all liability for Plaintiffs' claims to Yoga Six alone, sparing Defendant for his alleged misconduct. The Court will take judicial notice of the Agreements upon Defendant's request (Docs. 23-3, 23-4), which are referenced by

Plaintiffs in their First Amended Complaint and are not disputed as to their contents. (*See* FAC ¶ 64.)

The relevant portion of § 17.6 of the Agreements, at least according to Defendant, states the following:

> All claims, obligations, liabilities, or causes of action (whether in contract or in tort, in law or in equity, or granted by statute) that may be based upon, in respect of, arise under, out or by reason of, be connected with, or relate in any manner to this Agreement, or the negotiation, execution, or performance of this Agreement (including any representation or warranty made in, in connection with, or as an inducement to this Agreement, but not including separate undertaking such as guarantees of performance, personal guaranties, or corporate guarantees), may be made only against (and are those solely of) the entities that are expressly identified as parties in the preamble to this Agreement ("Contracting Parties").

(Doc. 23-3 § 17.6.) Defendant argues that "[t]he plain meaning of these liability shifting provisions is that all claims, obligations, liabilities or causes of action that Plaintiffs may have that relate in any manner to the Franchise Agreements or the negotiation, execution and performance of the same may only be asserted against Yoga Six." (Def. Br. at 10.)

The Court previously noted that § 17.6 contains an exclusionary clause that states ". . . to the maximum extent permitted by law, each Contracting Party hereby waives and releases all such liabilities, claims, causes of action, and obligations against any such Nonparty Affiliates, **unless such liabilities, claims, causes of action, and obligations arise from deliberately fraudulent acts**." (Doc. 27 at 2 (emphasis in original).)

In his supplemental brief, Defendant argues that the exclusionary clause pertains only to certain claims related to the Franchise Agreements. (Def. Br. at 10.) The Court disagrees. The exclusionary clause expressly and broadly states that the liability limitation of § 17.6 does not apply to claims against a Yoga Six agent for the agent's deliberately fraudulent acts. (Doc. 23-3 § 17.6; Doc. 23-4 § 17.6.) Plaintiffs argue, and Defendant does

not contest, that each of Plaintiffs' claims falls within the exclusionary clause of § 17.6, at least as currently pled.

Next, Defendant argues that even if Plaintiffs' claims fall within the exclusionary clause of § 17.6, Plaintiffs are still bound to pursue those claims against Yoga Six only under the liability shifting provision of § 18.4. That provision asserts:

> FRANCHISEE AGREES AND ACKNOWLEDGES THAT FULFILLMENT OF ANY AND ALL OF FRANCHISOR'S OBLIGATIONS WRITTEN IN THIS AGREEMENT OR BASED ON ANY ORAL COMMUNICATIONS WHICH MAY BE RULED TO BE BINDING IN A COURT OF LAW SHALL BE FRANCHISOR'S SOLE RESPONSIBILITY AND NONE OF FRANCHISOR'S AGENTS, REPRESENTATIVES, NOR ANY INDIVIDUALS ASSOCIATED WITH FRANCHISOR'S FRANCHISE COMPANY SHALL BE PERSONALLY LIABLE TO FRANCHISEE FOR ANY REASON . . .

(Doc. 23-3 § 18.4.) The parties dispute whether this liability shifting provision is enforceable under two California state laws: (1) California Civil Code § 1668; and (2) § 31512 of the CFIL.

Section 1668 states that "[a]ll contracts which have for their object, directly or indirectly, to exempt any one from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law." In essence, § 1668 "prevents parties from granting themselves licenses to commit future aggravated wrongs." *New England Country Foods, LLC v. VanLaw Food Prods., Inc.*, 17 Cal. 5th 703, 710 (Cal. 2025) (citation omitted). California courts have determined that § 1668 "does not apply to every contract or every violation of law." *Health Net of California, Inc. v. Dep't of Health Servs.*, 113 Cal. App. 4th 224, 233 (Cal. Ct. App. 2003). Still, the courts are clear that "a party cannot contract away liability for his fraudulent or intentional acts or for his negligent violations of statutory law" under § 1668. *Id.* at 234. "The language surrounding the word 'exempt' [] suggests that section 1668 should be read broadly." *VanLaw*, 567 P.3d at 68.

Defendant suggests that the liability shifting clause is enforceable because it merely shifts liability to Yoga Six and does not exculpate Yoga Six from its agent's liability, which means Plaintiffs can still seek redress for alleged wrongs. Defendant points to *Farnham v. Sequoia Holdings, Inc.*, 60 Cal. App. 4th 69, 77 (Cal. Ct. App. 1997), for the proposition that "barring claims against non-parties to a contract—as opposed to provisions that purport to completely exculpate liability—are permissible." (Mot. at 15.) Importantly, the court in *Farnham* expressly limited its holding to cases that involve contractual limitations of ordinary negligence tort claims, which the court held was not invalid *per se* under § 1668. *Farnham*, 60 Cal. App. 4th at 77 n.7 ("We are concerned in this case with a claim of defamation, and express no view about the validity of the 'sole remedy' provision if [the plaintiff's] claim alleged fraud or some other intentional tort.") (noting that there existed a line of cases that invalidated limitations on liability for fraud claims). But here, the claims brought by Plaintiffs concern Defendant's allegedly willful, fraudulent conduct and violations of law that induced Plaintiffs to enter into the Agreements.

As Plaintiffs point out, the California Supreme Court has expressly disapproved of *Farnham* and similar cases "to the extent they suggest a limitation on damages for willful injury may be valid in some circumstances." *VanLaw*, 567 P.3d at 69. In *VanLaw*, the court clarified that "no context-dependent analysis is required to determine whether a particular release of liability for 'willful injury' is barred by section 1668," and noted that "[w]hile ordinary negligence may be released in some circumstances . . . there is no similar flexibility for willful injury." *Id*. at 67.

Defendant contends that "*VanLaw* is entirely inapposite" because the provisions at issue here "in no way limit the damages Plaintiffs can seek in this matter . . . against Yoga Six." (Reply at 11.) But *VanLaw* does not suggest that an individual tortfeasor may be released from liability so long as a plaintiff can recover from a different tortfeasor, which was the principle established in *Farnham* as to ordinary negligence tort claims. Rather, *VanLaw* clarified that § 1668 is inflexible when it comes to willful tortious conduct or

fraud, *see id.* at 67, which this Court interprets to mean that the language of § 1668 must be applied strictly to intentional tort and fraud claims.

The Court's reading of *VanLaw* is supported by that court's explication of public policy which, first and foremost, discourages willful tortious conduct and fraud:

> [T]ort law arises from social policy, imposing duties on every community member for the protection of every other community member. Although private parties have wide latitude to form contracts, that latitude is bounded by these broader social policies. And our tort system's concern with vindicating social policy is at its zenith when it comes to willful wrongs . . . [P]ermitting contracts that reduce accountability for willful harm would effectively allow parties to put a price on violating our social policy against such harm.

*Id.* at 68 (citations omitted).

Defendant's reliance on *Dance Fitness Michigan, LLC v. AKT Franchise, LLC*, No. 823CV01643JVSJDEX, 2023 WL 7549894, at *8 (C.D. Cal. Nov. 13, 2023), fails to persuade the Court to read *VanLaw* differently. The court in *Dance Fitness* held that a franchisee's CFIL claims against the franchisor's agents were precluded under a liability shifting provision like the one at issue here. The court in *Dance Fitness* reached its holding under the reasoning of *Farnham*, but the basis of that holding was invalidated when the California Supreme Court expressly disapproved of *Farnham*'s holding as to claims involving intentional tort claims.

As applied here, under *VanLaw*, § 1668 invalidates the liability shifting provision of § 18.4 to the extent it limits Defendant's *own* responsibility for his own alleged fraud and willful injury to Plaintiffs. Cal. Civ. Code § 1668 (prohibiting contractual liability exceptions of "*any one* from responsibility for *his own* fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent . . .").

All Texas Plaintiffs' surviving claims arising under § 31200 sound in tort, and all of them are based on Defendant's alleged intentional fraud, misrepresentation, and violation of law as it relates to distributing and discussing documents that contained

material misrepresentations regarding the franchise. Whether or not these allegations state a claim under § 31200 is not an issue currently before the Court, as Defendant does not test the sufficiency of those allegations. Rather, the Court must only determine whether these claims, which are based on the purported fraud and willful misconduct of Defendant, are the kind that fall within the protection of § 1668. As currently pled, they do.

Because the liability shifting provisions found in §§ 17.6 and 18.4 of the Agreements are unenforceable under California Code § 1668 as to Texas Plaintiffs' surviving claims, the Court need not consider Defendant's other arguments regarding the enforceability of those provisions under the CFIL.

### D.    Leave to Amend

Ninth Circuit courts freely grant leave to amend a pleading when justice so requires even when a party has not requested leave. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000). Leave must be granted after a pleading is dismissed "if it appears at all possible that the plaintiff can correct the defect." *Id*. (citation modified). Count Eight asserting an Arizona state law claim cannot be cured because California state law applies to the instant matter. Count Nine cannot be cured either, because that common law claim is preempted by the CFIL under which Plaintiffs' claims arise. The portion of Counts One through Seven that are time barred under §§ 31303–04 are not amendable because no facts could possibly toll the four- and two-year absolute time limitations that passed by the time Plaintiffs filed the instant action. Accordingly, the claims that are dismissed herein are dismissed without leave to amend.

**IT IS ORDERED** granting in part and denying in part Defendant's Motion to Dismiss (Doc. 22). The Court dismisses, without leave to amend, Counts Eight and Nine as to all Plaintiffs, Counts One through Seven as to Snug Holding Company LLC, and the portions of Counts One through Seven asserted by Enlightened Armadillo, Inc., Mark and Ella Hrubant under § 31201 of the CFIL. The portions of Counts One through Seven asserted by Enlightened Armadillo, Inc., Mark and Ella Hrubant under § 31200 of the CFIL may proceed.

**IT IS FURTHER ORDERED** dismissing Snug Holding Company LLC as a party to this matter.

**IT IS FURTHER ORDERED** denying as moot Defendant's Motion to Dismiss (Doc. 16).

Dated this 29th day of May, 2026.

Honorable John J. Tuchi
United States District Judge